## Case No. 13,525.
### The STRANGER.

[1 Brown, Adm. 281; [1] 3 Chi. Leg. News, 217; 4 Am. Law T. Rep. (U. S. Cts.) 161; 13 Int. Rev. Rec. 150.]

District Court, E. D. Michigan. March, 1871.

TUG-BOATS—THEIR LIABILITIES AND DUTIES—PRACTICE IN ADMIRALTY.

1. Tugs, though not liable as common carriers, are bound to the exercise of ordinary skill and diligence in taking up, arranging and managing their tows.

2. It is also the duty of vessels in tow to use all possible means to avoid injury, and where injury ensues, to do all in their power to make the damages as light as possible.

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

3. A tug, using ordinary care, is not liable for the sudden and unexplained sheering of the tow to the right or left.

4. The admissions of a party to a suit may be given in evidence as independent testimony, though he has been sworn as a witness, and no impeaching questions asked him.

5. The statute permitting parties to be sworn has not changed the practice in this regard.

This was a libel against the tug Stranger, for unskillful towing of the schooner Monteagle through the Sault Ste. Marie canal on the 24th of June, 1868, in consequence of which she was caused to strike a sunken rock at the entrance of the canal, near its westerly side, breaking a hole through her bottom, and causing her to sink just below the lower lock. Schooner claims damages for salvage expenses, repairs, detention, &c., in the sum of $5,746 40.

The faults alleged against the tug, were: (1) That she entered the canal with her tow at too late an hour. (2) Entered at too great speed. (3) Entered to the right of the centre of the canal instead of the left of the centre, as she should have done, to avoid drawing the schooner upon a sunken rock, the locality of which was well known to the tug, and was unknown to the schooner. (4) Failure to inform the schooner of the existence and location of said sunken rock, or to give any information or orders to the schooner as to entering and getting through the canal safely. (5) Let her steam run down, and so failed to handle the schooner properly, in view of her condition, and thereby caused her to strike again below the lower lock. (6) The master of the tug left her after entering the canal, thereby neglecting his duty. (7) The master of the tug failed and omitted to inform himself of how much water the schooner drew, and how much cargo she carried, as was his duty, and as was the custom, before attempting to take her through the canal.

The answer admitted the towing as alleged, denied all the allegations in the libel of fault on the part of the tug, and charged that if the schooner struck a sunken rock at the entrance of the canal, it was in consequence of her not following the tug, and by her sheering to the westward at the entrance of the canal; that the injury caused thereby was slight, and was not the cause of the schooner sinking below the lock; that the sinking of the schooner at that point was in consequence of her striking a rock there, and was caused by the negligence and mismanagement on the part of the schooner, and without any fault on the part of the tug. The evidence is noticed in the opinion so far as necessary to a decision of the case.

Mr. Alfred Ruesell, for libellants.

The vessel in tow is considered under control of the tug, and the tug is liable for an injury to the vessel unless it can be shown that it is not in fault. The Quickstep, 9 Wall.

[76 U. S.] 670, 671, and cases cited. This case holds that the tug must see that the tow is properly made up, and that the lines are strong and securely fastened. The principle underlying it is that the tug assumes the responsibility in all things concerning the mode of performance of the contract of towage—that she is the mistress and not the servant—a point upon which previous cases had been in irreconcilable conflict. 1 Pars. Ship. 534–536. Consequence is, the tug is prima facie liable, and burden is upon her of disproving negligence. She is the pilot, and must keep the tow at a safe distance from the shore and from sunken rocks which are generally known and with the knowledge of the existence of which the tug is chargeable. The Angelina Corning [Case No. 384]; The Galatea, 2 Pars. Ship. 276, note.

The admission of libellants that the tug was not in fault should be stricken out.

(1) The rule allowing admissions against interest was established when parties were not competent witnesses, and for that reason alone. The party is now merged in the witness; evidence of his admissions becomes impeaching testimony, and the usual foundation must first be laid. His answer in chancery is now of no force except as a deposition. Roberts v. Miles, 12 Mich. 297.

(2) The fault of the tug is a mixed question of law and fact, concerning which an admission operating by way of estoppel cannot be made.

W. A. Moore and H. B. Brown, for claimants.

An admission of fault, though a mixed question of law and fact, is competent. The Manchester, 1 W. Rob. Adm. 62. Negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man would not do, under all the circumstances surrounding each particular case. Shear. & R. Neg. § 7; Taylor v. Atlantic Mut. Ins. Co., 9 Bosw. 369; Blyth v. Proprietors of Birmingham Waterworks, 11 Exch. 781.

LONGYEAR, District Judge. [The towing and salvage services and supplies rendered and furnished by the tug, and the reasonableness of the charges therefor being admitted, nothing remains but to consider and determine the case of the libel against the tug.] [2] It may be regarded as now well settled that tugs are not liable as common carriers. They are, however, bound to use ordinary care, skill and diligence in taking up, arranging, and managing their tows. The Syracuse, 12 Wall. [79 U. S.] 171. The vessel being towed has also certain duties to perform, among which are to follow the tug, and in situations of danger, to use all possible means to avoid injury, and when injury ensues, to do all in its power to make the in-

---

[2] [From 3 Chi. Leg. News, 217.]

jury as light as possible. The primary injury complained of, and the one from which all the damages alleged are claimed to have flowed, is that caused by the schooner striking a sunken rock at the upper entrance to the canal. If the tug is not in fault for this injury, then she is not liable at all. If she is liable for this primary injury, then she is also liable for all subsequent injuries and damages to the schooner necessarily and naturally flowing from or caused by it, and which could not have been avoided by ordinary care and diligence on the part of the schooner. The whole gravamen of the case is contained in the third article of the libel, and is stated in the following words: "Third. That said tug proceeded on said voyage, and while in said canal, towed said schooner out of, and away from the proper and ordinary course in the centre and easterly side of said canal, towards the westerly side thereof, and ran said schooner upon a sunken rock upon said westerly side, staving a hole in her bottom, whereof she soon sunk just below the lower lock." And further on, in the fourth article it is alleged, "that the master, mate, second mate, and wheelsman were on deck, and kept said schooner directly after said tug, and the damage was occasioned solely by the fault of said tug, and without fault on the part of said schooner;" thus recognizing the duty of the tow, as above stated, to keep directly after the tug.

The first important inquiry therefore is, did the tug "run the schooner upon a sunken rock" as alleged; and, conceding that the schooner did run upon a sunken rock, did she do so while following directly after the tug, and if not, then was it in any manner occasioned by the fault of the tug? I think these questions are fully answered by a simple statement of a fact clearly appearing by the proofs, and in regard to which there is no controversy, viz: That on entering the canal, the schooner took a sheer some distance, how far does not appear, to starboard, and that it was while she was on this sheer that she struck. The tug is not charged in the pleadings or proofs with being in any manner in fault for the sheering of the schooner, and as it is clear that she struck solely in consequence of such sheering, and would have gone clear if she had been kept as she is alleged to have been, directly after the tug, it is equally clear that the tug cannot be held in any manner responsible for the schooner striking as she did. The case of The Angelina Corning [supra], cited by libellant's advocate, was not one of the sudden sheering of the tow from bad steering qualities or otherwise, as in this case, and consequent running upon a sunken rock, but was that of the sagging or hanging off of the tow to leeward, occasioned probably by the change of course by the tug. It is very easy to see how a tug, knowing of the existence and location of a sunken rock, should be held responsible for running a tow upon such a rock in consequence of a change of course resulting in the sagging or hanging off of the tow in such a way as to bring her upon the rock. In that case the tug would be in fault for not having made due allowance for the sagging of the tow in consequence of the change of course; which is very different from a case of sheering of the tow solely on her own account, and not on account of any act or manœuvre of the tug, and which the tug could not have anticipated, or guarded against even if anticipated; because it would have been impossible to have known beforehand which way the tow might sheer. In that case it was held that whether the sagging of the tow was chargeable to the pilot of the tug or to the men on the tow, was immaterial, for the reason that the danger was not known to either. What would have been the result if the danger had been known to the tug and not to the tow, and the sagging of the tow in consequence of which the injury occurred had been, as in this case, chargeable to the tow, the court does not intimate. The case of The Quickstep, 9 Wall. [76 U. S.] 670, holding that the tug is liable for an injury to the tow, unless the tug can show that she was not in fault, applies exclusively to cases of injury resulting from the violation or neglect of some duty coming within the scope of the duties devolving upon that class of employment. In that case the primary cause of the injury was the use of imperfect and insufficient towing lines, and the court held that it was among the duties of the tug to see that the lines were sufficient, and she was therefore held liable. But it certainly cannot be considered among the duties of a tug to anticipate and guard against the tow taking a sudden sheer.

But it is also charged:

1. That the lateness of the hour and the darkness contributed to the result. I think the proof clearly shows that entering the canal at the time they did was at the suggestion and solicitation of those in charge of the schooner, and also that it was not at an unusual hour, and that it was still sufficiently light for all ordinary purposes in navigating the canal.

2. That the tug entered at too great speed. I think this is entirely unsupported by the proofs.

3. That the tug entered to the right of the centre of the canal, instead of at or to the left of the centre, in order to avoid the sunken rock, which rock was well known to the tug and not known to the schooner. The proof shows that the custom is to enter at the centre, and I think there is a clear preponderance of evidence that the tug so entered.

4. That the tug failed to inform the schooner of the existence and location of the sunken rock, or to give the schooner any information or orders in relation to entering and getting through the canal safely. Without stop-

ping to argue the question whether it was or was not the duty of the tug to give such information, under the circumstances of this case, or in any case of towage through the Sault canal, a channel perfectly familiar to all the navigators of the upper lakes, and through which those in charge of the schooner had frequently passed, it is a sufficient answer to that charge that under the proofs it is evident that such failure to give the information specified, did not in any manner contribute to the catastrophe. Besides, this charge is inconsistent with the theory of the libel, and the proofs in the case. The theory of the libel is, that the accident happened while the schooner was following directly after the tug, and that it so happened in consequence of the tug's drawing her against or upon the rock. The proof shows that it did not so happen, but, on the contrary, that if the schooner had so followed the tug, she would have passed in perfect safety. Under this theory and these proofs, it was entirely a matter of indifference whether such information was given or not.

5. The tug let her steam run down after the schooner struck; also failed to examine promptly the extent of the injury done to the schooner; so that, from these two causes, she could not and did not handle the schooner properly in view of her condition, in consequence of which she struck again below the lower lock. This is a charge of fault on the part of the tug after the accident at the entrance of the canal, and is independent of the question as to the responsibility of the tug for that accident, and there might be some question as to its admissibility under the libel as framed; yet, as some evidence was admitted in regard to it, and it was insisted on in the argument, I will proceed to consider it. First, that the tug let her steam run down. This is an inference merely, drawn by one of the witnesses, Mosier, from the fact sworn to by him, that the master or person in charge of the tug, when the tug was trying to draw the schooner off from the rocks below the lower lock, and had made two efforts to do so and failed, and he was asked "why he did not go ahead on her," replied, or, to use the language of the witness, "I heard him singing out about the tug that they had to get steam up." She certainly had steam up, or she could not have made the two efforts she did make; and to my mind, it is more rational to infer from what the master said that, although he had on his usual amount of steam, he desired to get up more in order to make an extraordinary effort, than it is that he had let his steam run down. Secondly, that the tug failed promptly to examine the extent of the injury occasioned by the accident at the entrance to the canal. There is no proof that those in charge of the tug knew anything of that accident until the canal had been passed, or nearly so. And

then how can it be claimed that it was the duty of the tug to examine the extent of the supposed injury, when those in charge of the schooner did not deem it of sufficient importance to even sound her pumps? I think this charge entirely unsupported.

6. The master of the tug left her, and neglected his duty. It was shown that the tug was in charge of a competent pilot, and therefore the charge is untenable.

7. The master of the tug failed and omitted to inquire of the schooner how much water she drew, and how great a cargo she carried. It nowhere appears that the draft of the schooner or the greatness of her cargo had anything to do with the accident, or that the want of a more minute knowledge of those matters on the part of the tug contributed in any manner to the accident. I hold, therefore, upon the whole, that the tug is exonerated from all blame as charged for the accidents to the schooner.

Other questions were raised and discussed, which it is unnecessary to consider, after having arrived at the above conclusion. I have arrived at my conclusions in this case wholly independent of and without any reference to the proved admissions of Richards, one of the owners, and Byram, also an owner and master of the schooner, exonerating the tug from blame for the accidents; and it is therefore unnecessary to decide the motion made by the schooner's proctor to strike out that testimony. But as an abstract question, however, it is clear to my mind that evidence of the admissions of parties to the record is just as competent now as it was before parties were admitted to testify as witnesses; and that, too, notwithstanding the parties whose admissions are sought to be proven have been sworn and have testified as witnesses on the trial, and were not asked upon the witness stand whether they had or had not made such admissions. Admissions are allowed to be proven, because they tend to prove some fact or facts pertinent to the issue, and not for the purpose of impeachment. If, however, statements made by a party, not otherwise admissible, are offered to be proven for the latter purpose, then, no doubt, the question should be first asked of the party while on the stand as a witness.

As to the other ground of the motion, that the admissions were of conclusions merely, and that such conclusions were of mixed law and fact, I think they would not be inadmissible on that ground alone. But where admissions are of conclusions merely, and not of facts simply, and have not been acted on so as to work an estoppel, they are entitled to but little weight. Libel dismissed.